[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11150
Non-Argument Calendar

_____

D.C. Docket No. 4:18-cv-00125-RSB-CLR

MAGGIE TSAVARIS,

Plaintiff-Appellant,

versus

SAVANNAH LAW SCHOOL, LLC,
a Georgia Limited Liability Company,
JOHN MARSHALL LAW SCHOOL, LLC,
a Delaware Limited Liability Company,
JOHN MARSHALL LAW SCHOOL,
a Georgia Corporation,
JMLS 1422, LLC,
a Delaware Limited Liability Company,
MICHAEL C. MARKOWITZ,
individually, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(February 25, 2021)

Before JILL PRYOR, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

This appeal arises from an age discrimination action filed by law professor Maggie Tsavaris against her former employer Savannah Law School, LLC and its parent John Marshall Law School, LLC ("SLS").[1]  The United States District Court for the Southern District of Georgia granted summary judgment in favor of the schools and this appeal followed.  For the following reasons, we affirm the District Court's decision to grant summary judgment.

I.

A.

Tsavaris began teaching at SLS in 2013 as a tenure-track associate professor. At SLS, tenure-track professorships are "probationary," meaning the law school decides whether to continue the professor's employment on an annual basis.  A professor becomes eligible for tenure after six years of service.

Reappointment procedures for tenure-track professors are governed by SLS's Faculty Handbook.  The Handbook vests the authority of reappointment with the law school's dean, Malcolm Morris.  This authority is customarily

---

[1] Tsavaris also sued Malcolm Morris, Michael Markovitz, John Marshall Law School, and JMLS1422.  The District Court granted summary judgment in favor of all Defendants, but Tsavaris challenges only the summary judgment entry for Savannah Law School, LLC and John Marshall Law School, LLC.  We refer to them collectively as "SLS."

exercised "through recommendations to the Dean by the Retention, Promotion, and Tenure Committee ["RPT Commitee"] after careful evaluation of the faculty member's performance."  When, however, a professor's "job performance is inadequate," the Handbook allows the Dean to simply "choose not to reappoint" the professor.

To aid the Dean in deciding whether to reappoint a probationary professor, the Handbook outlines a procedure for the RPT Committee to evaluate the professor and make a recommendation to the Dean.  Each year, the RPT Committee "evaluate[s] all aspects of the faculty member's performance with regard to scholarship, teaching, community service, professional conduct, and other aspects of the faculty member's professional duties.  The evaluation will include, among other things, class visitations and analysis of the [faculty member's] submitted scholarship."  The RPT Committee then submits a written recommendation to the Dean about whether the professor should be reappointed.

SLS reappointed Tsavaris as an associate professor each year until 2017.  In January of that year, the RPT Committee recommended that Morris reappoint Tsavaris for the 2017–2018 academic year.  A few weeks later, however, the RPT Committee sent Morris a memorandum stating that it "had not yet read" Tsavaris' student evaluations for the fall semester at the time it evaluated Tsavaris' performance and recommended her reappointment.  The student evaluations, which

the RPT Committee had since read, "raise[d] some concerns" that it thought Morris may wish to address with Tsavaris. Specifically, "the evaluations . . . contain[ed] a number of [] negative comments and Scantron responses." The memorandum concluded that "[w]e think student evaluations are valuable but should be taken with a grain of salt," especially for legal writing classes (which Tsavaris taught).

Shortly after receiving the Committee's memorandum, Morris visited Tsavaris' classroom to observe her teaching as he had done on two previous occasions. Morris was displeased with the quality of Tsavaris' teaching and, after reading Tsavaris' student evaluations, found that many of her students felt similarly. Morris said Tsavaris' teaching was "the worst [he] had ever seen at the school."

On January 18, 2017, Morris told Tsavaris that he was considering not reappointing her for the 2017–2018 academic year. At Tsavaris' request, Morris sent Tsavaris a letter explaining his reasons. His reasons were twofold.

First and foremost, Morris was considering not reappointing Tsavaris because the teaching performance he observed from her fell short of the standard of "strong teaching" described in the Faculty Handbook. Morris observed "almost no interaction with the students" when he visited Tsavaris' classroom. "[I]n one instance almost the entire class involved little more than [Tsavaris] reading from a book and explaining . . . what the author was conveying and why it was useful

4

information."  "Given your prior teaching experience," the letter continues, "one would expect your teaching to be closer to being 'excellent' or 'good' at this time."

Second, Tsavaris' student evaluations confirmed Morris' impression of her teaching.  Over half of the students in her legal writing class indicated that Tsavaris "did not hold their attention in class nor ma[ke] good use of class time."  In her pretrial advocacy course, one third of students said she "did not hold their attention" and over one third said she "did not make use of class time."  Morris concluded that these evaluations "confirm my view that the students are not engaged effectively in the class."

Tsavaris responded to Morris' reasons in a letter on January 27, 2017.  She explained that a drug she was taking for pain was interfering with her teaching ability.  She assured Morris that the unsatisfactory teaching he had observed was due to the drug and informed him that she had stopped taking it "so that [she could] return to being an excellent professor."  Tsavaris also addressed several negative student evaluations, either conceding the criticisms and pledging to improve or rebutting them.

On January 31, 2017, Morris sent Tsavaris a letter informing her that he would not be reappointing her for the 2017–2018 academic year and that her employment with SLS would terminate on July 31, 2017.  Morris reiterated that

"the primary but not exclusive reason for the decision is my evaluation of your teaching."

After terminating Tsavaris, Morris hired two associate professors—Mark Hoch and Lauren Knight—to teach the legal writing courses Tsavaris had taught. Tsavaris estimates that Hoch is in his fifties and Knight in her thirties.

B.

On May 25, 2018, Tsavaris sued SLS in the United States District Court for the Southern District of Georgia. Her complaint alleged, among other things, that SLS's decision not to reappoint her was based on her age (which was sixty), in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA").

After discovery, SLS moved for summary judgment, arguing that Tsavaris' age discrimination claim failed as a matter of law because (1) there was no direct evidence of discriminatory animus and (2) Tsavaris failed to show a similarly situated comparator.

The District Court recognized that an ADEA plaintiff can withstand summary judgment in three potential ways: (1) through direct evidence of age discrimination; (2) the *McDonnell Douglas* framework; or (3) by otherwise presenting a "convincing mosaic of circumstantial evidence that warrants an inference of intentional discrimination."

The Court found that the evidence Tsavaris called "direct" at most suggested discrimination and was therefore circumstantial. As to the *McDonnell Douglas* framework, the Court found that Tsavaris established a prima facie case of age discrimination but concluded that she failed to show that SLS's proffered reason for her nonrenewal (her inadequate teaching performance) was pretext. Finally, the Court concluded that Tsavaris failed to present a convincing mosaic of circumstantial evidence because, once again, she failed to show pretext.

On appeal, Tsavaris argues the District Court erred in holding that she did not (1) present direct evidence; (2) show pretext; or (3) establish a convincing mosaic of circumstantial evidence. We reject Tsavaris' arguments and affirm the District Court.

## II.

We review *de novo* a district court's order granting summary judgment, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on an ADEA claim, an employee must show that age was the but-for cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

As the District Court correctly noted, an ADEA plaintiff may withstand summary judgment in three potential ways: (1) through direct evidence of age discrimination; (2) by carrying her burden under the *McDonnell Douglas* framework; (3) or by otherwise presenting a "convincing mosaic of circumstantial evidence that warrants an inference of intentional discrimination." We consider each in turn.

## A.

When an ADEA plaintiff presents direct evidence of age discrimination, summary judgment is improper. *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997). We have defined direct evidence as evidence reflecting a discriminatory attitude correlating to the discrimination complained of by the employee. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). "[T]he evidence must indicate that the complained-of employment decision was *motivated* by the decision-maker's ageism." *Id.* at 1358–59 (emphasis in original). Thus, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age will constitute

8

direct evidence." *Id.* at 1359 (quotation marks omitted). The quintessential example is "a management memorandum saying, 'Fire Earley—he is too old.'" *Id.* (quoting *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).

Conversely, evidence that merely "*suggests* discrimination" and "leav[es] the trier of fact to *infer*" it is not direct evidence. *Earley*, 907 F.2d at 1081–82 (emphasis in original). The same is true of evidence that is "subject to more than one interpretation." *Merritt*, 120 F.3d at 1189.

We agree with the District Court that Tsavaris failed to present direct evidence of age discrimination. Tsavaris argues that Morris' deposition testimony is direct evidence that he chose not to renew her because of her age. Specifically, she points to Morris' statement that the professors whose employment he chose to renew for 2017–2018 were "younger in time [than Tsavaris], so . . . to the extent there were issues, they had opportunities to correct them."

Tsavaris admits, however, that Morris' statement is ambiguous. By "younger in time," Morris could have been referring to the professors' ages, which would amount to a direct admission that he chose not to renew Tsavaris because she was older than other professors. On the other hand, he could have meant that Tsavaris had more experience as a law professor than the others and therefore less time to improve before becoming eligible for tenure. Only the former would amount to direct evidence of age discrimination. *See Hazen Paper Co. v. Biggins*,

9

507 U.S. 604, 612, S. Ct. 1701, 1706 (1993) (while an employee can act based on characteristics that are correlated with age, the employer must "focus on those factors directly" and may not "rely on age as a proxy"). By admitting this ambiguity, Tsavaris defeats her argument that the statement is direct evidence, since direct evidence must not be "subject to more than one interpretation." *Merritt*, 120 F.3d at 1189.

We conclude, therefore, that the District Court correctly found that Tsavaris' case was based only on circumstantial evidence.

B.

When a plaintiff attempts to prove her case using only circumstantial evidence, we generally apply the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct 1089 (1981). *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). This framework puts the initial burden on the plaintiff to establish a prima facie case of retaliation. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Eskra v. Provident Life and Acc. Ins. Co.*, 125 F.3d 1406, 1411 (11th Cir. 1997). Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant employer, who must articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Eskra*, 125 F.3d

at 1411.  If the defendant articulates one or more such reasons, the plaintiff must produce evidence sufficient for a reasonable factfinder to conclude that the reasons given by the employer were pretext and that the real reason was discriminatory. *Id.*; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08, 113 S. Ct. 2742, 2747–48 (1993).

To show pretext, the plaintiff may demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Alvarez v. Royal Atl. Dev.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (quotation marks omitted).  Simply introducing evidence of discriminatory animus unconnected to the employer's proffered reasons is insufficient.  *See Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1309 (11th Cir. 2007).

The District Court found that Tsavaris established a prima facie case of age discrimination and SLS does not cross-appeal the issue.  Therefore, the only question before us is whether Tsavaris introduced sufficient evidence to show that SLS's reason for her nonrenewal was pretext and that the real reason was discriminatory.

We agree with the District Court that Tsavaris failed to show that SLS's proffered reason for her nonrenewal was pretext.  SLS's primary explanation for

11

Tsavaris' nonrenewal was that Morris had personally observed Tsavaris' teaching and found it wanting for a professor of Tsavaris' experience. To a lesser extent, Morris' decision was also based on negative student evaluations of Tsavaris' teaching. By our count, Tsavaris makes six separate pretext arguments. We address and reject each in turn.

First, Tsavaris attempts to show pretext by arguing that Morris' deposition testimony contradicts SLS's proffered explanation, showing that the real reason behind her nonrenewal was her age. Specifically, she points to Morris' statement that, when making employment decisions, he "takes into context whether these are young professors who are first starting out and getting their legs firm in the ground or if these are seasoned professors who . . . should have matured at this point in their careers."

While we have recognized that "an employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext," *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006), we are unpersuaded that Morris' testimony contradicts SLS's proffered explanation or in any way supports an inference of discrimination. Immediately after the statement, Morris was asked whether "youth makes a difference" in his evaluations. Morris responded "[e]xperience makes a difference," and clarified that he meant "young in terms of years . . . in the profession." Thus, Morris'

testimony shows only that he considered professors' experience levels, not their ages, in evaluating their performance. This is permissible under the ADEA and perfectly consistent with SLS's proffered explanation. *See Hazen Paper*, 507 U.S. at 611, 113 S. Ct. at 1706–07 (recognizing that "an employee's age is analytically distinct from his years of service").

Second, Tsavaris attempts to show pretext by arguing that SLS treated her differently than similarly situated comparators. Tsavaris specifically points to her colleague Shakira Pleasant, who was renewed even though she had performance evaluations that were at least as negative as Tsavaris'.[2]

Even if we assume that disparate treatment of similarly situated comparators is sufficient to establish pretext, Tsavaris' argument fails because Pleasant was not similarly situated. We have required comparators to be "similarly situated in all material respects." *Lewis v. City of Union City Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc). Though a "comparator[] need not be the plaintiff's doppelganger[]," she will ordinarily "share the plaintiff's employment or

_____

[2] Tsavaris also relies on the deposition testimony of her colleague Marc Roark to establish disparate treatment of additional comparators. Roark stated that the "RPT committee observed younger . . . professors who raised greater concerns for classroom effectiveness than Professor Tsavaris." Although the RPT Committee reported these concerns to SLS's Associate Dean, the professors were nonetheless renewed for the 2017–2018 academic year. Because the record does not specifically identify who these professors were, Tsavaris cannot rely on them as similarly situated comparators. *See Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1274 (11th Cir. 2004) (rejecting "non-specific claims of disparate treatment" that "failed to identify *any* specific" individuals).

disciplinary history." *Id.* at 1226–27 (citation omitted). Put another way, "a plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* at 1227 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 135 S. Ct. 1338, 1355 (2015)).

Pleasant's situation was materially distinct from Tsavaris' in at least three respects. First, Pleasant had not been teaching at SLS as long as Tsavaris had.[3] Morris testified that this was an important consideration in evaluating professors and deciding whether to renew their employment, and it is not for this Court to say otherwise. *See Damon*, 196 F.3d at 1361 ("We are not in the business of adjudging whether employment decisions are prudent or fair.") Second, the RPT Committee sent a memo to Morris highlighting Tsavaris' negative student evaluations. Neither Pleasant nor any other professor was singled out in a similar manner. Third, after receiving the RPT Committee's memo, Morris personally observed Tsavaris' teaching and concluded it was the worst he had seen at SLS. There is no

---

[3] Tsavaris argues there is a genuine issue of fact as to whether she had more teaching experience than Pleasant. She gives two reasons. First, while she admits she began teaching at SLS one year before Pleasant, she argues that this one year is insignificant because she did not receive any training for the first semester. Second, she notes that Pleasant was paid a higher salary than she was. According to Tsavaris, this creates an issue of fact as to whether she was more experienced.

These points are insufficient to overcome the undisputed fact that Tsavaris was a more senior SLS professor than Pleasant. That Tsavaris received no formal training for a semester and was paid less than Pleasant is immaterial to the issue.

14

indication in the record that Morris observed a comparable teaching performance from Pleasant.  For these reasons, Tsavaris failed to establish that Pleasant was a similarly situated comparator, and we accordingly reject her pretext argument.

Third, Tsavaris argues that pretext follows from the fact that she was the oldest professor at SLS and the only professor that SLS has ever chosen not to renew.  She also notes that, according to her colleague Marc Roark, Morris' decision not to renew Tsavaris was "highly unusual[] [and] non-transparent."

The logic of Tsavaris' pretext argument seems to be that suspicious circumstances surrounding an employment decision undermine the employer's proffered explanation for the decision.  Such an argument flatly contradicts the principle that "[s]imply introducing evidence of discriminatory animus unconnected to the employer's proffered reasons is insufficient to establish pretext." *Crawford*, 482 F.3d at 1309.  We therefore reject the argument.

Fourth, Tsavaris argues that Morris routinely failed to observe standard procedures prescribed by the Faculty Handbook in deciding whether to renew SLS professors and that this shows pretext.  Specifically, Morris disregarded the RPT Committee's recommendations in favor of his own "biased and discriminatory judgment," resulting in favorable treatment of younger professors over older ones.

We have recognized that "an employer's deviation from its own standard procedures may serve as evidence of pretext." *Hurlbert*, 439 F.3d at 1299.  Here,

however, Morris acted in accordance with the Faculty Handbook's procedures. The Handbook gives Dean Morris alone the authority to make reappointment decisions. And when a professor's performance is inadequate, the Handbook allows the Dean to "choose not to reappoint" the professor regardless of what the RPT Committee recommends. Tsavaris' argument is therefore without merit.

Fifth, Tsavaris attempts to show pretext by directly rebutting Morris' judgment that she was a poor teacher. In some cases, we have said this is a valid way to show pretext when an employer's proffered reason for a decision is the employee's alleged poor performance. *See, e.g.*, *Damon*, 196 F.3d at 1364–65 (employee demonstrated pretext by introducing evidence creating a "genuine dispute of material fact as to his job performance").

Assuming this theory of pretext applies in the present case, we find that Tsavaris failed to introduce evidence sufficient to create a genuine issue of fact as to her teaching performance. In support of her argument, she relies chiefly on the letter she sent Morris after he warned her that he was considering not renewing her employment. In that very letter, however, Tsavaris admitted that her performance had been lackluster and pledged to do better. And, in any case, we require more than an employee's subjective disagreement with her employer's assessment of her performance to establish pretext. *See Chapman*, 229 F.3d at 1030 ("A plaintiff is not allowed to . . . substitute his business judgment for that of the employer.");

16

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) ("[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason."); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. . . . Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." (quotation marks omitted)).

Finally, Tsavaris argues that Morris did not verify Tsavaris' experience level before deciding not to renew her employment, and that this shows that SLS's explanation that she was performing poorly for her experience level is pretext.

We reject Tsavaris' argument because it is flatly contradicted by the record. Far from showing that Morris assumed that Tsavaris had a certain experience level merely because of her age, the record shows that he requested and received a list of SLS's probationary professors and the dates on which they would be eligible for tenure a few months before Tsavaris' nonrenewal. Morris, therefore, did not have to assume Tsavaris' experience level.

In sum, Tsavaris failed to show that SLS's proffered reason for not renewing her employment was pretext. The District Court therefore properly concluded that Tsavaris failed to carry her burden under the *McDonnell Douglas* framework.

C.

17

Notwithstanding a plaintiff's failure to establish a prima facie case of discrimination under *McDonnell Douglas*, she may survive summary judgment if she presents a convincing mosaic of circumstantial evidence that creates a triable issue about the employer's discriminatory intent. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff may establish a convincing mosaic with evidence that demonstrates, among other things: (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systematically better treatment of similarly situated employees; and (3) that the employer's justification is pretextual. *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019).

We agree with the District Court that Tsavaris failed to present a convincing mosaic of circumstantial evidence sufficient to preclude summary judgment. For the most part, Tsavaris relies on the same evidence to establish a mosaic as she does to show pretext. Those arguments fail under *Smith* for the same reasons they fail under *McDonnell Douglas*.

The strongest evidence for Tsavaris still only gets her halfway there. Her colleague Roark stated in an affidavit that Morris told the RPT Committee in September 2016—four months before he observed her teaching—that he had resolved not to renew Tsavaris' employment for the 2017–2018 academic year.

18

This is strong evidence that SLS's proffered explanation is pretext. If Morris made up his mind to terminate Tsavaris before observing her teaching, then his observation could not have been the basis for his decision. However, the evidence is insufficient for a jury to make the further inference that Tsavaris' age, rather than some other factor, was the reason for her termination. *See Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) ("[A] reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (quotation marks omitted)).

The District Court therefore correctly concluded that Tsavaris failed to present a mosaic of circumstantial evidence sufficient to withstand summary judgment.

III.

For the foregoing reasons, we affirm the District Court's decision to enter summary judgment for SLS.

**AFFIRMED.**